Good morning, Your Honor. Robert Rainwater on behalf of Anthony Rhone, who is the appellate in this case. I obviously, this involves a similar issue as the last case, and I see the courts well aware of the law, so I'm going to try to focus on what makes this case different from the other case and why this case fits into what I would call a TM model and not the Johnson case. Before you get to the merits counsel, this case is a little unusual in the sense that we have an appellate who is twice absconded from custody or restriction during the time of the appeal. Although it's a little unusual, should the fugitive disentitlement doctrine be applied in this case? I don't think so. I don't think it serves any purpose. He absconded several, I don't know, I'm not sure of what happened this last time. I read the most recent probation report on this, and they only indicate he absconded once. But it's my belief he originally got out in December, December 28th of this year. He was sent back here. He absconded. Then he turned himself in again. I understand they placed him in a placement. I don't know what happened then, whether it was a violation or not. And then he absconded again. Obviously, he has a serious alcohol problem. What happens is he gets out and, you know, he starts drinking and using crack cocaine, which he wrote a letter to the Court explaining this last time again, and absconds. And when he sobers up, he turns himself in. And he's turned himself in, you know, within a relatively few days every time in this case. Kennedy, should that have any bearing on, if we get to the merits, on what was appropriate to impose on him in this case, the fact that he's doing the crack cocaine, that he feels free to take off whenever he wants to, do whatever he wants to? Well, I don't see how it relates to the conditions we have in this case. Obviously, it's an issue the Court can consider. It's my understanding that the current recommendation is, for his hearing next week, is to terminate probation. But that's an issue we'll have to see what the judge does. So I don't see what it has to do with these conditions particularly. I would like to point out the differences in this case. First of all, the restrictions in this case were more onerous than Johnson in the last case. Not only was there a restriction on probation, but there was also a restriction on the use of drugs.  I don't think that's true. I don't think that's true. They are, and they aren't. I mean, what's called for is an assessment, and treatment is to follow only if the assessment leads in that direction. And he can challenge the sufficiency of the recommendation for treatment. I don't think that's true, because the order provides that he's to be in an assessment and, if recommended, to go ahead with treatment. No order to come back to court or need to come back to court. No, but there's not an order to come back to court. But isn't it possible for him to come back and request an alteration of the conditions? That's always open, isn't it? I think that's very unlikely. If there's an assessment and he's ordered to do that, that he could come back. I don't know how he would. I guess he could file a motion with the court. Well, yes, and argue that the assessment was inadequate or that it was misunderstood or whatever. Well, I think that's still more onerous than the other case where, to do that, he would have to go back to court and get an order. In this case, there's no requirement that he would have to go back and challenge it. So I think it's more restrictive in that sense. It's also more restrictive in that it ordered periodic polygraph testing in this case, which is different than the other cases. Secondly, it's different from Johnson in that this case involved an attempted bank robbery where he was so intoxicated, the teller basically told him to get lost. And it involved nothing to do with any sex offense. And it did not involve, like in Johnson, he used a weapon similar to what he did in his prior sex offense. So in here, I think there's no relation to the offense. The conditions are more restrictive. And I would point out that in this case, since it was first imposed in 2013, there's been plenty of time to do an assessment. And apparently probation doesn't think it's important to do an assessment. They haven't even bothered to do one. He hasn't. Well, if they had, I suppose the appeal would be moot. So, I mean, I'm not sure where that takes you. Well, I think it goes to the fact that it's really unnecessary. Well, but just because probation did it doesn't mean the district court was wrong. It may mean that probation is overburdened or something. But I don't understand how that bears on the district court's exercise of discretion at the time. Well, the district court apparently feels it's necessary based upon probation's recommendation. Right. And yet probation doesn't bother to follow up on it. I think that's relevant. And I, you know, I understand what the court is saying in that. But I also think that it's important to point out that not only is it relevant, the government's argument seems to indicate that he's only been out 48 hours since his conviction. But I would point out he's been out at times for years after his rape conviction. I think he was out for almost 10 years with no further convictions. And I would like to talk more about the paragraph 86 or 87 that's in the probation report. I think those are the kinds of inferences that the court in TM found were speculative inferences that couldn't count against him. You're talking about the polygraph where he failed questions about forcing women. Exactly. And restraining women for sex and raping women? Yes. What's speculative about that? Because there's no time on that. I don't know when that happened. He has, in the probation report, it says he has a prior arrest for a rape in the 70s. I don't know if he's talking about that or something different. We have no ---- The report is dated December 8, 2011. Yes. And that's when the questions were asked. But the question doesn't say when did you have these fantasies or when did you do these things. It could have been old. We don't know. We don't have any reference to go on there. Well, he was found deceptive in his answers concerning committing new sex crimes as of 2011. That's one of the things that paragraph 87 says. So it sounds like at least his mental life, if not his actual activities, were current as of 2011. Well, they could have been current as of 2011. He was in prison for two years before that. So I don't think he committed any sex offenses then. No, but I took that to mean that his plans for committing new crimes. Well, I would point out that I don't think polygraphs are reliable. And in this case, we have no idea whether this is some prison guard who's ---- Is that an argument that you made in your brief? Yes. Okay. I've forgotten that. Yes. What's the relevance of the recurrent alcoholism and the failure to take meds? For the alcoholism? Yes. I don't see any relevance to that. He hasn't been required to take any medication or do any treatment for sex offenses. He's desirous of taking meds, and he indicated to the court at the hearing he wanted to take antabuse, but apparently there's no doctor who will prescribe that. If he can't hold his behavior in check with regard to alcoholism, what makes us think that he'll hold his behavior in check with regard to his sex problems? And wouldn't an assessment reasonably be related to that issue? I don't see how that's related. You know, he has an alcohol problem, and that's his problem, been his problem for the last 30 years. But, you know, he hasn't been ---- And that's when he had his sexual fantasies. I don't think that's ---- There's no indication that alcoholism has anything to do with his sexual fantasies. In fact, I think it prohibits that. I think somebody who's perpetually drunk can't have sex or have sexual urges. I think that's probably the case, and I don't see any relation. In fact, it diminishes it to me. And I think that, you know, we don't have any indication of who the polygraph examiner was, what reliability it was, and when he had those fantasies, if now, since then, or whatever. But I don't see that as being relevant, and I reserve the rest of my time for rebuttal. Thank you. You may do that. Thank you. May it please the Court. Good morning. My name is Tom Ratcliffe. I represent the United States Government in this matter. Judge Smith, regarding your question about the Fugitive Disentitlement Doctrine, I think that the issue you were getting at there dovetails with the issue that Judge Hellerstein was getting at, which is the behavior at issue and how his absconding, at least twice during the pendency of this appeal, was not a good thing. And I think that the issue you were getting at there dovetails with the issue that Judge Hellerstein was getting at, which is the behavior at issue and how his absconding, at least twice during the pendency of this appeal, fits in with his impulse control problems and his alcohol problem. The district court judge in this case, a very experienced district court judge, had this defendant before him on four separate occasions. The first was for the sentencing on the underlying bank robbery that, as the panel knows and has just been discussed, that bank robbery occurred while the defendant was visibly intoxicated and smelled like alcohol. The second time that the district court judge had the defendant before him was on the first supervised release violation hearing in March of 2017. There was another supervised release violation hearing in April of 2017. And then finally, the supervised release revocation hearing where revocation actually was ordered in June of 2017. And that is, of course, where the conditions were imposed which led to this appeal. I mention all this because the district court judge, as recognized or as indicated in the sentencing hearing transcript from the supervised release violation hearing, noted that the defendant has a profound alcohol problem, a problem that the district court judge described as a almost a medical issue, not, quote, some other failing. That gave the court and gives the government concern that the defendant, because of his inability to go, as the district court judge said in June of 2017, really more than 48 hours without going out and drinking. But, counsel, alcoholism without some other connection to being a sex offender doesn't support a special condition of this kind. I mean, if you're the bank robber and you have no sexual violence history, this would be entirely inappropriate, even if you were an alcoholic. So what's the connection? Your Honor, I don't dispute that, and I'm sorry that my long lead in here has taken a while to get to the point. My point is that the district court judge, I believe, was aware that the defendant, because he has this alcohol problem and because he committed the previous bank robbery while intoxicated, is going to be, would be at risk for having his inhibitions and his ability to abide by the law reduced by his alcoholism. And so he's going to be, in 2011, describing, admitting, not even as part of the polygraph, but just admitting as part of this polygraph test interview, that he followed a woman around and wanted to rape her. Those urges... But, you know, I take opposing counsel's point that paragraph 87 does not describe the time during which those events occurred. It could refer back to the 1986 conviction, or it could refer to something that happened when he was, you know, 19, and it doesn't, except for that tag end where it talks about wanting to commit new crimes, I'm not sure it's all that helpful in terms of connecting it up chronologically. That's correct, Your Honor. We don't have in the record an indication of the timeframe of the events to which the defendant admitted that were then published in that December 2011 report by the Oregon Department of Corrections. What we have, Your Honor, of course, is the admittedly less reliable than the defendant's own admission, but still concerning information that he failed to polygraph questions about whether he'd forced a woman for sexual contact, whether he'd restrained a woman for sex, and whether he had, as the Court noted, any, quote, new rapes. Your Honor, those, that concern, that red flag that is just fluttering in the wind there for the district court judge when the defendant was before him for the fourth time makes it, we believe, entirely reasonable for the court to have ordered the minimal intrusion within the wide latitude that the district court had, the minimal intrusion of a sex offender assessment. What is your response to counsel's argument that polygraphs are not reliable so that the 2011 results should be discounted? Well, Your Honor, that's not an issue that we, that the government briefed. I recognize there are limitations to the reliability of polygraphs. I don't know how to draw that line, but because of the context of that and because of the fact that those three questions It's not really evidence of the fact. It's really evidence of possible or probable conduct that would be related to the supervised release condition, the special condition of an assessment. Certainly, Your Honor. It raises the question, and together with other factors that we've talked about, it seems to me it makes it reasonable for ordering a special assessment. The real issue, as I see it, is there has to be a nexus between the evidence considered by the district judge and the imposition of this special condition. Under our case law, really old convictions are disfavored. It's too attenuated, and the question before us seems to be based on the polygraph, based upon his statements, even if they were 2011, the reality is there is some evidence dealing with his sexual statements and proclivities that gave the judge a nexus for imposing this condition. Is that a reasonable reading of what happened here? I think it is, Your Honor. I think that the polygraph combined with the admission hung a lantern over that 1986 conviction for that attempted rape in the bathroom of a Marriott hotel in Portland. That, Your Honor, we think pulls forward in time the significance of that 1986 conviction. I recognize that it's very old, and I recognize that at the time that the defendant was sentenced on the supervised release violation at issue in this appeal, that his 2011 admissions, again, undated, were five and a half years old. But those two things together, combined with the defendant's problems with impulse control, we think made it a particularly safe choice, and the kind of choice that we, the government would hope, at least, that district court judges would make in deciding to impose an assessment to get more information, to determine whether the public is at risk, to determine whether it's necessary then to order a sex offender treatment program. Well, it isn't quite that. The condition, unlike in the previous case, isn't we'll get an assessment and then we'll see. It says we'll get an assessment, and if it recommends treatment, he must go to treatment. So it's a little more complete. Does that make any difference? Judge, I still think that the tripwire here is the assessment, and everything else flows from the assessment. I recognize, as my colleague Ms. Potter said, that it's entirely possible that the defendant in this case, if an assessment had been conducted and recommended treatment, it's entirely possible that the defendant could petition the court then to narrow the confines of the assessment, of the treatment, excuse me, or to dispute the findings of the assessment. And we just don't know yet, because that hasn't happened. Does it make any difference to our analysis that it's been a long time since the court ordered this condition and the assessment has not been done, which is one of counsel's concerns? Well, Your Honor, the defendant in this case has only been on supervised release for some period of time during 2017. I can't tell you exactly how many days he's been on supervised release. Certainly there was the imposition of a 12-months-and-one-day sentence last June. He was furloughed from that, the record below shows, in late December, and that's when he failed to report to the Emergency Housing Center, and he was arrested then in January in Portland. There has been a time since then that he's been apparently under those conditions of supervised release, and as the court noted, if an assessment had been done, I think we would have heard about that. The government does not have any reason to believe that an assessment has been done. And then, of course, there was the abscond in April and his reporting, I believe it was in April, and his reporting back into custody in late May. So I don't know how many months that the defendant has been in a position to even have an assessment, but I also recognize, as the court indicated, that the probation department and the services that are available may not be completely lined up to do it immediately, and that this is, after all, a multi-year term of, well, I think it's a 23-month term of supervised release, and that there is more time remaining to satisfy that special condition. Seeing no further questions, the government asks that the decision of the district court be affirmed. Thank you. Thank you, counsel. Mr. Rainwater, you have about a minute. I just want to point out a couple things. One is the government tries to link its impulse control and alcohol to the sexual problems. I would note that the court, the district court itself, never articulated that. It only talked about his impulse control in terms of alcoholism and never related that or had a concern about how that related to any sexual offenses. Counsel, can this court, even though the district court didn't articulate it, can we take into account your client's impulse control problem and applying the nexus of the most recent statements that we have, anyway, under the polygraph in our evaluation of whether the district court abused its discretion in imposing this condition? I don't think so. I think this court is reviewing its discretion, and in reviewing its discretion, it should review what the district court had to say. And if the district court didn't make the correct findings, then it abused its discretion. So it didn't have to — the district court would have had to articulate this position if we were to consider it. Is that correct? I think so, yes. Okay. Secondly, I would like to point out to Judge Graber particularly that I did object to the polygraph. It's on page 9 of my brief. And the government, the last thing is the government pointed out that apparently he hasn't been able to be analyzed or assessed for the last few years, but this condition has been there since 2013, not since the last violation. In fact, at the hearing, the court said, well, isn't this condition already on there? And the probation said, yeah, but we have to reinstate it every time he's violated supervised release. So they've had since 2013 to do an assessment, and I would point that out. Thank you, counsel. The case just argued is submitted, and we appreciate both counsel's helpful arguments.
judges: Graber, M. Smith, Hellerstein